LEE
v.
PORTER.

## C. M. LEE *against* PORTER and STILES.

*P.* gave a mortgage of land, the title to which was in *S.*, who was in possession thereof with *P.*; and *S.* if he was not present and assenting to its execution, afterwards treated it as a valid and subsisting mortgage, and voluntarily paid part of the money due on it: *Held,* in a suit by the mortgagee against *P.* and *S.*, for a sale and foreclosure of the mortgage, that *S.* was estopped from setting up his title to the premises, in avoidance of the mortgage.

A mortgage was given in 1814, by *P.* one of several occupiers of a lot of land, for a rateable proportion of money due on a former mortgage covering the whole lot, of which the premises in question were only a part, which former mortgage was given to *B.* in 1799, in renewal of a prior mortgage of the lot, in 1794, to *R.*, who had assigned it to *B.*: *Held,* that though *R.* claiming under the grantee of the patentee, whose title to the land had become forfeited to the State, by attainder, and therefore the mortgage by *P.* might be said to be without consideration; yet *P.* being fully apprised of the state of the title when he gave the mortgage, could not set up this defence against the plaintiff, a *bona fide* purchaser of the mortgage, for a valuable consideration; especially as he had, with the other occupiers of the lot, in a petition to the legislature, stated that they had satisfied the mortgage to *B.*, and on that ground the State had made an equivalent abatement of the sum, which they would otherwise have been obliged to pay to obtain the title from the State.

It *seems,* that the Court will not relieve against a mortgage, on the ground of an outstanding claim, which the mortgagor, for greater security to his title, had bought in, without any judicial investigation or decision on such claim, in a suit in which all proper persons were made parties, and were called on to bring forward their title.

An act of the legislature in 1818, reciting, that the title to certain lands were vested in the State by the attainder of *J. W.*, (in 1779,) and that such title had been perfected by the removal of incumbrances; and directing conveyances to be made by the Surveyor General to certain occupiers of the land so claimed, as forfeited, is not sufficient to devest the title of persons holding adversely, without a regular eviction in the ordinary course of law.

A deed, therefore, from the State, pursuant to such an act of the legislature, cannot be set up as a defence, to defeat a *bona fide* mortgage.

THE bill stated, that the defendant *Porter*, being indebted to *Nathan Underwood*, on the 31st of *December*, 1814, in the sum of 600 dollars, payable in four equal annual instalments, the first payable, *June* 1st, 1815, executed a mortgage to him of part of lot No. 28, in *Freemason's* patent, in the county of *Oneida*, described by metes and bounds, and containing 85 acres and a half. That *P.*, before that time, had conveyed the land in fee, to the defendant *Stiles*, who, with *P.* was in possession, at the time of executing the mortgage, and knew and assented to the giving of the mortgage to the plaintiff. On the 8th of *February*, 1815, *U.* assigned the bond and mortgage, for the consideration of 600 dollars, to the plaintiff, who was then wholly ignorant of any defect in the title, and gave immediate notice of the assignment to *P.* That by some contract between *P.* and *S.*, the latter was bound to pay off the mortgage, and did pay to the plaintiff the three first instalments; but had refused to pay the last, alleging as a reason that his title under *P.* had failed, and he had been obliged to repurchase the land from the State. That when the mortgage was given, the land was held under a title from *Henry Platner*, to whom a mortgage on it had been given, which he had assigned to *John Bay*, who procured a renewal of the mortgage to himself; that on a bill filed by the claimants, under whom *S.* held, against *B.* for relief against the mortgage, it was decreed that no relief could be afforded againt it; and in pursuance of that decree, the said mortgage to *U.*, (who was assignee of the other mortgage to *B.*,) was executed, to secure a rateable proportion of the mortgage to *B.*, which included the whole of great lot No. 28, and which proportion was justly chargeable on that part of the lot possessed by the defendants. The plaintiff averred, that the mortgage to *B.* was, at the time of executing the mortgage to *U.*, a subsisting mortgage, and had not been satisfied, otherwise than

by each owner of land in the lot securing his rateable proportion of the amount. That when the mortgage to *U.* was given, it was well known to the occupants on the lots, that the land was liable to the claims of the State, arising from the attainder of *John Weatherhead,* the original proprietor, which claim had since been released to the occupants, by the State, for an inconsiderable consideration, compared with the actual value of the land ; and the hardship of paying off the mortgage to *B.* was made a special ground of application to the legislature for relief, and which was granted, because the occupants had paid, or were bound to pay off that mortgage. The bill *prayed* for relief, by decreeing the payment of the balance due on the mortgage, or that the premises be sold, &c.

The *answer* of the defendants admitted that *P.* executed a deed of the land, on the 14th of *February,* 1814, with warranty to S. who took possession, which he had held since that time. That *P.* gave the mortgage to *U.,* and that 150 dollars with interest remained due on it. That this mortgage was given in payment of the mortgage by *N.* and *S. Bumpus* to *Bay.* That when *P.* gave the mortgage to *U.,* he was informed by *U.,* that the State would never assert their claim to the lands, and that if the mortgage to *Bay* was paid, the title to the premises would be complete, and never afterwards be disturbed. That on this representation, *P.* executed the mortgage without the knowledge or consent of *S.,* nor did *S.* know that it had been given, until sometime after its delivery ; nor was there any agreement between *P.* and *S.* as to the payment of it. That the payments made by *S.* on the mortgage were voluntary, and made to prevent a suit on the bond against *P.,* who is a very infirm old man, above the age of 80 years. That the defendants were not parties to the bill filed by *N.* and *S. Bumpus,* against *B.* and *U.,* for relief against the mortgage to *B.*———
———*S.* expressly denied that he knew of the mortgage by *P.,* when it was given, or that he ever assented to it, or made

any agreement to pay it ; though he made the payments, with a view to assist *P*. That he was under no legal or equitable obligation to pay the mortgage ; and as he was obliged to purchase the land from the State, and *P*. could not indemnify him, or reimburse what he had advanced, he refused to pay any thing more on the mortgage. *S*. denied that he ever promised the plaintiff to pay the residue of the mortgage, or that he ever received any consideration from him for such a promise ; though it was his intention to have paid the last instalment before the State interfered, rather than *P*. should be sued. That he has no funds of *P*. in his hands, nor does he owe him, and if he is obliged to pay the residue, it will be an entire loss. That the premises were forfeited to the State, by the attainder of *Weatherhead*, and the title from *Platner* has wholly failed ; that the State had asserted its title to the land, and the defendant *S*. as one of the occupants of the patent, received a deed, on the 27th *May*, 1818, from the Surveyor General, for the consideration of 355 dollars and 40 cents, according to the provisions of the act relative to the lot No. 28, in *Freemason's* patent, passed *April* 3d, 1818. *S*. admitted that he signed the petition with the other occupants in great lot No. 28, to the legislature, as stated in the bill, representing that some of the petitioners, with others under whom they claimed, had paid or secured the money due on the mortgage from *Bay*, and stating the mortgage and the suit in Chancery, and also certain trials between *John Thurman* and the occupants, and that the legislature remitted the interest on the sum at which the land had been appraised, on the grounds, as the defendant supposed, stated in the petition, &c.

The cause having been put at issue, several witnesses were examined, and much evidence taken on both sides, the material parts of which, so far as the proof varied from the facts admitted in the pleadings, are stated in the opinion delivered by the Court.

LEE
v.
PORTER.

*Gold* and *Sill*, for the plaintiff.

*J. Kirkland*, contra.

Where a person having or claiming title to land, sees another execute a mortgage of it to a third person, without disclosing his title, or assents, in any manner, to the validity of the mortgage, he will not be allowed, afterwards, to set up his title, to defeat such mortgage.

THE CHANCELLOR. 1. When the mortgage in question was given by *Porter*, the title to the mortgaged premises was in *Stiles*, the other defendant; but under the circumstances of the case, the defendant S. ought to be estopped from setting up his title in bar of that mortgage. The defendant S. in his answer, denies that the mortgage was given with his knowledge or assent; but there are two witnesses (*N. Bumpus* and *N. Underwood*,) who contradict the answer in this particular, and declare that the defendant S. was knowing and assenting to the mortgage, when it was given. It is also in proof, and is admitted by the answer, that the defendant S., afterwards treated the mortgage as valid and subsisting, and that he paid to the present plaintiff, as assignee of *N. U.*, the original mortgagee, three out of four of the instalments, of which the payments were to consist. The defendant says, the payments were voluntary and gratuitous on his part; but whether they were voluntary, or made in pursuance of some contract between S. and P., founded on a valuable consideration, is not material. It is sufficient, that the defendant S. assumed the mortgage to be valid, and if he was not present at the execution of it, he knew that P. (who resided on the premises with him,) had it in contemplation to give such a mortgage, and he gave to it his subsequent assent and ratification. When U. took the mortgage, we have reason to presume he dealt with P. as owner of the land; and the defendant S. suffered him so to act, without objection, and without disclosing his title. We have no evidence that U. knew of the title of S., and upon settled principles of equity and justice, the defendant S., who suffered U. so to deal, and who subsequently ratified the bargain, ought not now to be permitted to interpose his own title in avoidance of the mortgage. Another, and an equally

conclusive answer to any such objection is, that *Bay's* mortgage was a subsisting lien on the whole lot, and bound the land sold to *S.*, and the new mortgage was a continuation of the former lien, and so intended by an arrangement to which all parties acceded.

1821.

LEE
v.
PORTER.

2. The only difficulty in the case arises from the objection of a want of consideration for the mortgage.

When the mortgage was given, the land was held under a title derived from *Henry Platner*, who claimed under a deed from *Allen M'Dougall*, the original grantee, and it continued to be so held, until the defendant *S.* took a title under the State, in *May*, 1818. This was almost twenty-four years after *Platner* had sold the premises in question to *N. & J. Bumpus*, and after the land had been held and occupied under that title. The mortgage in question was given for a rateable proportion of the money due on a former mortgage, covering the whole lot, and of which the premises were only a part. The former mortgage was given by the purchasers under *Platner* to *Bay*, the assignee of the original bond and mortgage given to *Platner*. The present mortgage of 1814, was thus a renewal of a mortgage given to *Bay*, in 1799, which was a renewal, in part, of the original mortgage given to *Platner*, in 1794; and if *Platner* had no title to lot No. 28, in the *Freemason's Patent*, when he sold to *N. & J. Bumpus*, in 1794, and took their bond and mortgage, the present mortgage may be said to want consideration, on being traced back to the original source of consideration; and this is the foundation of the present defence.

But there are several objections to this defence.

In the first place, the plaintiff appears to have been a *bona fide* purchaser of the mortgage in question, for a valuable consideration; and when the mortgage was executed, both the defendants were apprized of the condition of the title and of the claim of title said to exist in the State. The mortgage was given without surprize, imposition, or igno-

1821.

LEE
v.
PORTER.

rance, and under a sense of the peril to which *Platner's* title .was exposed, when he took this and other mortgages from the settlers on the lot, for their rateable proportions of the prior mortgage to *Bay,* deducted from the sum due on' the prior mortgage of 1,100 dollars, in consequence of this alleged prior and better title in the State. The defendant *P.* may, therefore, be considered as having given, and the defendant *S.* as having assented to or ratified the mortgage, with an assumption of the risk of the State claim. This inference is the more necessary, when we advert to the fact, that *U.* when he took the mortgage in question, never warranted the title under *Platner,* though he declared his belief that the settlers never would or could be disturbed by the State claim, and though he offered to warrant the *Platner* title, if the settlers would give renewed mortgages for the whole of the prior mortgage, including the costs of the Chancery suit stated in the pleadings, which offer was declined.

When one of several occupiers of land on which there was a mortgage, executed a mortgage of his part of the land, towards relieving the land from the prior mortgage, he cannot afterwards object, that such prior mortgage, was without consideration, and void, as he knew the true state of that mortgage when he gave his own mortgage.

Another objection to this defence is, that the defendants and five other settlers on the lot, presented a petition, under their signatures, to the Legislature, in *January,* 1818, praying for relief against the State claim, in which they stated, that they *had satisfied* the prior mortgage to *Bay.* That satisfaction consisted in giving the present and other renewed mortgages for their rateable proportions of the prior mortgage ; and upon that representation the Legislature, by the act of *April* 3d, 1818, entitled " an act relative to lot No. 28, in the *Freemasons'* patent," remitted to them 13 years interest on the appraisement of 1804. The answer admits that the deduction was made upon the ground of hardship stated in the petition ; and after that representation and consequent abatement, on the part of the State, the defendants would seem to be bound, in equity and good faith, to make good their representation, by a complete satisfaction of their rateable proportion of the mortgage to *Bay.* The State made an equivalent deduction on account of that mortgage, and

the defendants may be considered as having had credit from the State for the whole amount of the mortgage now in question. There appears, then, to be injustice, if not a colour of fraud, in this defence.

There is one remaining objection, which is, that the title of the State has never been established by any judgment at law. Before the plaintiff's mortgage is to be set aside, as being without consideration, the claimants under *Platner* ought to have been regularly evicted by due course of law, and in an action in which they might have had due opportunity to make their defence. The State derived title under the attainder of *John Weatherhead*, in 1779, and it had never asserted its claim, by any suit at law, from 1779 down to 1818, when the defendants applied to the Legislature for a release of their claim. Here was a lapse of 39 years, and for more than half that period the land had been held and occupied under an adverse title. Why was not this application made to the Legislature before the renewed mortgages in 1814? I doubt whether this Court has ever given relief against an incumbrance, in consequence of some outstanding claim which the debtor, for greater caution, chooses to buy in, before it has ever received a judicial determination and sanction, in a suit to which all proper persons were parties, or were called to put forward their title.

*Relief is not granted against a mortgage, on account of an outstanding claim which the mortgagor, for greater security to his title, bought in, without any judicial decision on such claim.*

The act of the 15th of *April*, 1817, (*sess.* 40. *ch.* 245.) does, indeed, recite, that the Attorney General had given a certificate, " that the title of certain lands in the *Freemasons*' patent, in the county of *Oneida*, was vested in the state by the attainder of *John Weatherhead ;*" and it also recited, that " the title of the State in said lands had since been perfected by removing incumbrances." The act of *April* 3d, 1818, (*sess.* 41. *ch.* 81.) also directed conveyances to be given to the defendants, and the other five petitioners, as being occupants of lot No. 28, in *Freemasons*' patent, forfeited by the attainder of *John Weatherhead.*" But

*A recital in an act of the Legislature that the title to land was vested in the State by attainder of J. W. &c., is not sufficient to devest the title of a person holding adversely, without a regular eviction in the ordinary course of law.*

neither that recital, nor that declaratory averment, was suffi-
cient to devest the persons holding under *Plather*, without
a regular eviction, founded on a fair discussion and deci-
sion, in the ordinary course of justice.   The plaintiff has
an undoubted right to insist, that his claim as a mortgagee
is not forfeited and lost by the mere force and effect of
such a recital and declaratory clause.   It cannot affect or
impair that right; and so the doctrine on this point was de-
clared  by  the Supreme  Court, in  *Jackson* v.  *Catlin*;
(2 *Johns. Rep* 248.) and the judgment in that case was
afterwards affirmed in the Court of Errors.

The deed set up by the defendants may be considered in
the light of an attornment to a stranger, and a recognition
of his right,  in order  to  defeat the mortgage ; but I am
of opinion that the defendants cannot be permitted in this
case to avail themselves of such a defence.   I shall, conse-
quently, decree, that they pay the last instalment of 150
dollars, with interest from the 1st of *June*, 1817, and the
costs of this suit to be taxed, or  that the mortgaged premi-
ses be sold.

Decree accordingly.